Gregory D. Phillips (USBN 4645)
PHILLIPS WINCHESTER
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107
Tel: (801) 935-4932
*gdp@phillipswinchester.com*

*Attorneys for Plaintiff*

---

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company, | **COMPLAINT** |
| Plaintiff, | **Case No. 2:22-cv-00199-DBB** |
| vs. | |
| MODARAMO MEDIA, LLC DOES 1-10, | **Judge: David Barlow** |
| Defendants. | |

COMES NOW Plaintiff XMission, L.C. ("XMission"), and complains and alleges the following:

PARTIES

1.     Plaintiff, XMission, L.C., ("Plaintiff" or "XMission") is a Utah limited liability company with its principal place of business in Salt Lake City, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

1

2. Defendant Modaramo Media, Inc. (hereinafter "Modaramo" or "Defendant") is a New York business entity, which operates through various tracking domains such as mdrtrck.com, and many others.

3. On information and belief, DOES 1-10 are individuals and companies who act as agents for Modaramo in the processing and publishing of email advertisement with the purpose of generating revenue for Modaramo. (Modaramo and defendants DOES 1-10 are collectively referred to herein as "Defendants".)

<u>JURISDICTION AND VENUE</u>

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* (CAN-SPAM Act of 2003), and pursuant to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a)

5. This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because the claims relate to and arise out of the same course of conduct, and form part of the same case and controversy, as the claims over which this Court has original jurisdiction.

6. This Court has personal jurisdiction over the Defendants because the Defendants directly or through their agents have knowingly taken actions, or failed to act, in manners that have directly caused harm to XMission in Utah, and/or have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, including through contracts,

and through the sending of thousands of commercial emails into the state either directly or through their agents. The exercise of jurisdiction is reasonable as Defendants should have known that they would be subject to the jurisdiction and laws of the forum state when they sent, or caused the sending of commercial emails to customers of an email service provider located in Utah, and failed to properly unsubscribe email accounts located in Utah.

7.      A substantial part of the unlawful actions by the Defendants occurred in this judicial district. Therefore, venue is proper pursuant to 18 U.S.C. §1391.

## GENERAL ALLEGATIONS

8.      XMission was founded in 1993 as Utah's first dial-up Internet Service Provider ("ISP").

9.      From its early days as a private**,** Utah ISP, to its current role as a global business Internet provider**,** XMission has expanded its technical offerings to include sophisticated cloud hosting, web hosting, email service and hosting, collaboration tools, business VoIP phone service, and high speed internet connectivity solutions including optical Ethernet, copper and fiber.

10.      Throughout its history, XMission has also worked with hundreds of Utah's nonprofit organizations by providing free web hosting services, and by sponsoring a variety of community-based events and facilities.

11.      XMission is a widely known and well-recognized ISP in Utah.

12.      XMission owns all the servers, routers, and switches on its network through which it hosts and provides its Internet access services for its customers.

13.     XMission has an expansive network and infrastructure, which it has had to consistently update, upgrade, and augment in order to combat ongoing spam problems.

14.     XMission is the sole owner of all its hardware, and has complete and uninhibited access to, and sole physical control over, the hardware.

15.     As a legitimate and leading ISP, XMission is a bona fide Internet Access Service ("IAS") as that term is defined under 15 U.S.C. §7702(11) and 47 U.S.C. §231(e)(4).

16.     XMission provides Internet access services to both commercial and residential customers.

17.     The email accounts hosted and served by XMission include email accounts owned by third-party customers of XMission, email accounts owned by employees and/or customers of XMission's third-party customers, email accounts owned by employees of XMission, and also email accounts owned by XMission itself.

18.     For purposes of this Complaint, "spam" is defined as unlawful commercial email.

19.     Modaramo, either independently or in concert with Does 1-10, operates various email marketing campaigns for the purpose of promoting products, services, and websites of others.

20.     On information and belief, to disseminate the links to the various web properties, Modaramo maintains agency relationships, and/or retains other agents, also called publishers, and manifests assent to those agents/publishers to act on their behalf and subject to their control, to disseminate email marketing campaigns.

21.     The agents, identified herein as Does 1-10, operate for pay or other consideration.

22.    The agents manifest assent to Modaramo and otherwise consent to act on Modaramo's behalf by disseminating the marketing campaigns that Modaramo provides, and generates web traffic to benefit Modaramo.

23.    Modaramo controls the content of the marketing campaigns and provides the method for its dissemination to its agents.

24.    Through the date of this Complaint, XMission has received at least 9,782 spam emails, sent and/or initiated by Modaramo acting for itself or in its capacity as agent for other advertisers.

25.    As an agent, Modaramo transmitted the emails pursuant to contract with advertisers for pay or other consideration.

26.    The spam emails adversely affected XMission, and contributed to an overall spam problem suffered by XMission in Utah.

27.    Each of the Defendants is an "initiator" of the spam emails as they either transmitted or procured the transmission of the emails in question as such term is defined in 15 U.S.C. § 7702 and 7706(g)(2).

28.    On information and belief, the Defendants individually or acting in concert with each other, sent additional spam emails that XMission has been unable to connect directly with them due to the misleading nature of the information in the emails.

29.    Each of the emails is a commercial message and contains commercial content.

30.    The emails, and each of them, were received by XMission on its mail servers located in Utah.

31.     Throughout its business, XMission has expended significant sums of money in hardware acquisition, maintenance and related expenses to increase capacity to deal with increased spam and related harm, spam filtering expenses, and employee time in dealing with problems caused by its receipt of spam generally.

32.     On average, XMission expends hundreds of thousands of dollars per year in dealing with spam related issues and associated employee time, exclusive of attorney fees.

33.     The harm XMission continues to suffer, as the result of its collective spam problem, is much more significant than the mere annoyance of having to deal with spam or the process of dealing with spam in the ordinary course of business (i.e., installing a spam filter to flag and discard spam).

34.     The harm XMission suffered, and continues to suffer, is manifested in financial expense and burden significant to an ISP; lost employee time; lost profitability; the necessity to purchase and dedicate equipment specifically to process spam that could otherwise be dedicated to providing internet access services; harm to reputation; and customer and email recipient complaints, including over 1,700 reports of unwanted spam arising from the email at issue in this Complaint.

35.     Each of the emails in question violates at least one provision of the CAN-SPAM Act.

FIRST CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)**

36.     Each of the previous paragraphs is realleged herein.

37.     The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information.

38.    An email header is materially misleading when it impairs the ability of an Internet access service processing the message on behalf of a recipient to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation, or the ability of a recipient of the message to respond to a person who initiated the electronic message.

39.    Header information can be materially false or misleading in a number of ways including as examples: (1) the use of a spoofed sender domain; (2) the use of unregistered Sender Domains in the sending of the emails; (3) the use of generic "from" names that fail to identify any party, coupled with private WHOIS information; (4) the use of false or misleading "from" names (e.g., celebrity names); (5) the use of Sender Domains, the registration information for which is false or materially incomplete; and (6) the use of Sender Domains registered in violation of registrar policies.

40.    At least 2 emails associated with Modaramo contain header information that includes an unregistered domain, the access to which was never acquired by the sender, and are therefore false or misleading.

41.    At least 4,286 emails associated with Modaramo contain header information that includes a generic "from" name and is accompanied by private or materially incomplete WHOIS information, and are therefore false or misleading.

42.    At least 4,153 emails associated with Modaramo contain header information that is accompanied by false or materially incomplete WHOIS registration information, and are therefore false or misleading.

43.     An email that originated from a sender domain registered with an ICANN compliant domain registrar who maintains an anti-spam policy, also violates Section 7704(a)(1) regardless of whether the email contains a header that is technically accurate.

44.     Defendants, either individually or in concert with each other, registered domains with the following ICANN compliant registrars:

      a.  BigRock Solutions Ltd.

      b.  eNom, Inc.

      c.  GoDaddy.com, LLC;

      d.  NameCheap, Inc.;

      e.  Register.com Inc.

      f.  Wild West Domains, LLC

45.     Each of the foregoing registrars maintain policies that prohibit the use of domains registered with them for spam or bulk email, or unsolicited email.

46.     Each of the registrars require registrants to agree to abide by the terms in order to register the domains.

47.     In registering the domains with the registrars, Defendants either expressly or impliedly agreed to the terms. However, the domains were registered with an intent to use them in a manner that violates the governing terms and where obtained under a false pretense.

48.     Defendants used the domains in question in violation of the terms to send at least 8,646 spam, bulk and/or unsolicited emails associated with Modaramo. Each email was sent in violations of 15 U.S.C. § 7704(a)(1)(A).

49.    XMission prays for relief in the amount of $100 per violation of 15 U.S.C §
7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3).

SECOND CAUSE OF ACTION
<br>**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(2)**

50.    Each of the previous paragraphs is realleged herein.

51.    Section 7704(a)(2) of the CAN-SPAM Act states, "It is unlawful for any person to
initiate the transmission to a protected computer of a commercial electronic mail message if such
person has actual knowledge, or knowledge fairly implied on the basis of objective
circumstances, that a subject heading of the message would be likely to mislead a recipient,
acting reasonably under the circumstances, about a material fact regarding the contents or subject
matter of the message."

52.    At least 2,359 emails associated with Modaramo contain a subject heading that
claims that the promoted products provide health benefits, uses scare tactics to induce the
recipient to open the message, or otherwise presents "fake news."

53.    On information and belief, none of the Defendants possessed any data,
documentation, or substantiation supporting the claims in the subject lines, and the subject lines
are designed merely to induce the recipient to open the email under false pretenses.

54.    XMission prays for relief in the amount of $25 per violation of 15 U.S.C §
7704(a)(2) pursuant to 15 U.S.C. § 7706(g)(3).

THIRD CAUSE OF ACTION
<br>**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(5) – Against Each Defendant**

55.    Each of the previous paragraphs is realleged herein.

9

56.     The CAN-SPAM Act requires that every commercial email contain (1) a clear and conspicuous identification that the message is an advertisement or solicitation; (2) a clear and conspicuous notice of the opportunity to opt-out; and (3) a valid physical postal address of the sender. *See* 15 U.S.C. § 7704(a)(5)(A).

57.     At least 3,116 emails associated with Modaramo fail to contain one or more of the content required by Section 7704(a)(5)(A).

58.     XMission prays for relief in the amount of $25 per violation of 15 U.S.C § 7704(a)(5) pursuant to 15 U.S.C. § 7706(g)(3).

<u>REQUEST FOR RELIEF</u>

Plaintiff respectfully requests the following relief:

A.     Entry of judgment against each defendant in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1).

B.     Entry of judgment against each defendant in the amount of $25 per violation of 15 U.S.C. § 7704(a)(2).

C.     Entry of judgment against each defendant in the amount of $25 per violation of 15 U.S.C. § 7704(a)(5).

D.     Treble damages pursuant to 15 U.S.C. § 7706(g)(3).

E.     Attorneys' fees and costs pursuant to 15 U.S.C. § 7706(g)(4).

F.     Pre and post-judgment interest at the highest rate permitted by law.

G.     Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent email messages to XMission and its customers.

H.     All other relief deemed just in law or equity by this Court.

DATED this __ of March 2022.

PHILLIPS - WINCHESTER

 /s/ Gregory D. Phillips

Gregory D. Phillips

Plaintiff's Address:
51 East 400 South
Suite 200
Salt Lake City, Utah 84111