Robert H. Scott (USB #10981)
**AKERMAN LLP**
170 South Main Street, Suite 725
Salt Lake City, Utah  84101-1648
Telephone: 801.907.6900
Facsimile: 801.355.0294
Email:  robert.scott@akerman.com

*Attorneys for Modaramo Media, Inc.
incorrectly sued here as Modaramo Media, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>   Plaintiff,<br><br>v.<br><br>MODARAMO MEDIA, LLC, DOES 1-10,<br><br>   Defendants. | **DEFENDANT MODARAMO MEDIA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No.  2:22-cv-00199-DBB<br><br>Judge David Barlow |

Defendant Modaramo Media, Inc. incorrectly sued here as Modaramo Media, LLC, ("Modaramo") hereby files this Motion pursuant to Fed. R. Civ. P. 12(b)(2) seeking an Order dismissing the Complaint for Lack of Personal Jurisdiction and submits the accompanying Memorandum of Law in Support Thereof, stating as follows:

**I.     MOTION**

In accordance with Fed. R. Civ. P. 12(b)(2), Modaramo hereby moves to dismiss XMission, L.C.'s ("XMission" or "Plaintiff") Complaint for lack of personal jurisdiction.  For the reasons identified and detailed below, Modaramo respectfully requests that the Motion be granted and that the Complaint be dismissed in its entirety with prejudice.

## II.     PRELIMINARY STATEMENT

Modaramo has been brought into this district not because it resides in Utah, conducts business in Utah, or even because it purposefully directed any conduct towards Utah, but rather simply because XMission decided to sue it in Utah. However, because this forum is completely foreign to Modaramo, and one with which it has no connection or nexus, the Court lacks jurisdiction to adjudicate XMission's claims against it.

Modaramo does not send email. As a result, it does not and did not sent email specifically to Utah. Were this not enough, Modaramo does not have a single employee, officer, or office in Utah, nor does it licensed to conduct business in Utah, provide services to any clients located in Utah, or market any of its services to Utah residents. It does not contract with publishers to send commercial email on its behalf and it does not advertise its services through commercial email. All of its witnesses and documents are located in its home state of New York, not in Utah. Stated simply, Modaramo has no connection with Utah. Its contact with the State is not continuous, systematic, or substantial. In fact, it has had no contact with the State at all until XMission filed suit against it in Utah. To put a finer point on it, XMission's claims against Modaramo do not arise out of any conduct of Modaramo's that has a direct connection with Utah.

Consequently, there are insufficient minimum contacts between Modaramo and Utah to justify an appropriate exercise of personal jurisdiction that comports with the notions of fair play and substantial justice. The Complaint should thus be dismissed in its entirety with prejudice.

## III.    BACKGROUND

1. Modaramo is a New York corporation which provides human relations services to its clients, all of which are also located in New York. *Bonabi Decl.* ¶¶ 2, 5.

2. Modaramo does not provide marketing or advertising services directly or indirectly to, or in concert with, any entities. *Bonabi Decl.* ¶ 3.

3. None of Modoradmo's activities associated with its provision of services occur in Utah. *Id.* ¶ 6. All of that business activity happens in the State of New York. *Id.* ¶ 5. Modaramo has never been licensed to conduct business in Utah. *Id.* ¶ 7. It has never had any offices, property, assets, telephone listings, bank accounts, employees, members, or officers in the State of Utah. *Id.* ¶¶ 8-11, 14-15. It has never directly marketed its services to Utah residents. *Id.* ¶ 13.

4. Modaramo has never had any contact with XMission prior to being served with the Complaint filed in this matter. *Id.* ¶ 18.

5. Modaramo has never consented to the jurisdiction or venue of Utah. *Id.* ¶ 19.

## IV.   ARGUMENT

It is XMission's burden of establishing jurisdiction over Modaramo. It has not and cannot satisfy that burden.

Generally, a federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process. *iAccess, Inc. v. WEBcard Technologies, Inc.*, 182 F.Supp.2d 1183 (D. Utah 2002). Because the Utah long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis. *Systems Designs, Inc. v. New Customware Co., Inc*., 248 F.Supp.2d 1093, 1097 (D. Utah 2003). Thus, to establish personal jurisdiction, XMission must show that Modaramo had "minimum" contacts with Utah – *i.e.,* that it purposely availed itself of Utah's benefits and protections – and that exercising jurisdiction will not "offend traditional notions of

fair play and substantial justice." *Id*. at 1104. Minimum contacts can give rise to either specific or general personal jurisdiction.

  *1. Modaramo Is Not Subject to General Jurisdiction in Utah*

  A party seeking to invoke a forum's general jurisdiction over a defendant must satisfy the demanding standard set forth by the Supreme Court in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) and *Daimler v. Bauman*, 571 U.S. 117, 127 (2014). "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (*citing International Shoe Co. v. State of Wash*, *Office of Unemployment Compensation and Placement*, 326 U.S. 310, 317 (1945). "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there . . . With respect to a corporation, the place of incorporation and place of business are 'paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137. Outside of these paradigm bases, only exceptional cases give rise to general jurisdiction anywhere else. *See Fighter's Mkt. Inc. v. Champion Courage LLC*, 207 F.Supp.3d 1145, 1150 (S.D. Cal. 22016). For example, even if a corporate entity might operate "in many places, it cannot be deemed at home in all of them." *Daimler*, 571 U.S. at 137. The Complaint does not allege sufficient facts to support an exercise of general jurisdiction. To the contrary, it's allegations make clear that Modaramo is not at home in Utah, accurately asserting that it is "a New York business entity. *Complaint* ¶ 2. Moreover, Modaramo is not licensed to conduct business in Utah, does not have any offices in Utah, does not provide services to any Utah residents, and derives no income from Utah. *Bonabi Decl.* ¶¶ 5-8, 17.

4

Because it is XMission's burden to establish a factual basis to assert jurisdiction over Modaramo, this is insufficient to satisfy that burden.  Modaramo is not subject to general jurisdiction in Utah.

*2. Specific Jurisdiction is Lacking Given the Absence of Contacts with Utah*

In contrast to general jurisdiction, which requires a defendant to essentially be at home in a forum state, specific jurisdiction on the other hand applies only when a non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.  *System Designs, Inc.*, 248 F.Supp.2d at 1097.  Specific jurisdiction relates to instances where the claim against a defendant arises out of that defendant's contact with the forum.  *See Daimler*, 571 U.S. at 127.  Because the Court is tasked with ensuring that the relationship between the defendant and the forum which gives rise to the claim arises from contacts that the *defendant* creates with the forum, the focus of the inquiry is on the *defendant's* affirmative contacts with the State and whether there is a nexus between (i) such contacts, (ii) the claim asserted against the defendant, and (iii) the forum.  *See generally Walden v. Flore*, 571 U.S. 277, 284 (2014).  It is well established that the plaintiff "cannot be the only link between the defendant and the forum."  *Id.* at 285.

    A. <u>Modaramo Lacks Minimum Contacts with Utah and Did Not Purposefully Direct Any Conduct Towards Utah</u>

The Tenth Circuit analyzes purposeful direction under three distinct frameworks: (1) a defendant's deliberate continuing relationship with the forum state's residents ("continuing relationships"); (2) a defendant's exploitation of the forum state market ("market exploitation"); and (3) a defendant's intentional direction of harmful effects into the forum state ("harmful effects").  *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

5

An analysis of each of these individual frameworks demonstrates their inapplicability to Modaramo.

**Continuing Relationships**:   The typical purposeful direction analysis looks to the out-of-state defendant's "continuing relationships and obligations with citizens of [the forum state]." *Id*. at 905 (citing *Burger King*, 471 U.S. at 473.  While the Supreme Court "ha[s] upheld the assertion of jurisdiction over defendants who have purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State," *Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 473), Modaramo has never reached out beyond New York into Utah for any purpose, as it does not market to, derive revenue from, nor service any clients residing in Utah.  *Bonabi Decl.* ¶¶ 5-6, 13, 17.  This framework clearly favors Modaramo.

**Market Exploitation**:   "An out-of-state defendant's 'continuous[] and deliberate[] exploitation [of] the [forum state] market" may also satisfy the purposeful direction requirement.  *Old Republic Insurance Company*, 877 F.3d 905-906.  Again, Modaramo has never provided services to any clients which are Utah residents.  *Bonabi Decl.* ¶¶ 5-6.  Thus, rather than continuously or deliberately exploitate of the Utah market, Modaramo has been utterly absent from that market.  This framework also clearly favors Modaramo.

**Harmful Effects**:   "Purposeful direction may also be established – even in the absence of continuing relationships or market exploitation – when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." *Old Republic Insurance Company*, 877 F.3d at 907 (quoting *Calder v. Jones*, 465 U.S. at 790-91).  The effects test requires three elements: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . .

6

(c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). This test once again cuts in Modaramo's favor, as it neither provides services to any Utah residents nor does it market its services to Utah residents and, thus, could not be deemed to have taken any intentional conduct expressly aimed at Utah with the knowledge that the brunt of the effects would be felt in Utah.

Were the foregoing not enough, however, there is a baseline requirement of specific jurisdiction that there must be an affiliation between the underlying controversy and *defendant's* activity. XMission's claims fall short of making this demonstration and no amount of discovery or amendments to the pleading can cure the shortcoming, as the services that Modaramo provides is limited exclusively to human relations services to New York-based companies and thus it played absolutely no role the creation or transmission of the disputed emails at issue. Constitutional due process considerations demand, however, that the controversy must arise out of the *defendant's* contacts with the forum state. *Walden* 571 U.S. at 285. "[T]he mere fact that [defendant's] conduct affect[s] plaintiffs with connections to the forum State does not suffice" to exercise jurisdiction." *Id*. Additionally, the Tenth Circuit demands that there be a substantial connection between a defendant's purported contacts and the plaintiff's claims. *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016).

To the extent that XMission's claimed harm is that its servers' received of commercial emails, it does not implicate Modaramo at all. Modaramo did not send the emails, it did not create the emails, and it did not select the prospective recipients of the same nor did it direct that any action be taken that would have results in those serves receiving any of the disputed emails. To

be sure, Modaramo has never directed any commercial advertising or email marketing to residents of the State of Utah. *Bonabi Decl.* ¶ 13.

Consequently, to the extent that XMission's alleged injury arose from any conduct, it was the conduct undertaken by third-party email marketers over which Modaramo had no relationship, no control, and which was conduct that Modaramo had no knowledge and no direct involvement. The Complaint implicitly acknowledges this through its shotgun assertions that the conduct resulting in XMission's servers' receipt of the disputed emails was undertaken by Modaramo or its agents. However, as it relates to establishing jurisdiction over Modaramo, these allegations are problematic for a variety of reasons. Initially, XMission's conclusion that these third parties which sent the disputed emails were Modoradmo's agents is just that: a conclusory statement unsupported by a single factual assertion and, as such, should be afforded no weight by the Court.

Additionally, it would be an inappropriate exercise of jurisdiction over Modaramo where the forum state contacts are limited to conduct exclusively undertaken by those third parties. In this regard, an analogous CAN-SPAM case, *Zoobuh, Inc. v. Williams*, 2014 WL 7261786 (D. Utah Dec. 18, 2014) offers instructive guidance. In *Zoobuh*, the plaintiff alleged that defendant Thrive, a digital marketing company, either directly or through third-party publishers had sent tens of thousands of emails through plaintiff's Utah-based servers. Thrive contested jurisdiction, submitting a sworn declaration from its CEO attesting to the fact that Thrive had no involvement with or control over the emails at issue. Plaintiff acknowledged that the use of third-party publishers is an industry standard practice for email marketing. The Court refused to exercise specific jurisdiction over Thrive because, at best, plaintiff had shown contacts between the third-party publishers and the forum state but could not put forth any evidence of minimum contracts

between Thrive and the forum state. *Zoobuh*, 2014 WL at *5. Moreover, beyond its legal conclusions of an agency relationship between Thrive and the third-party publishers, plaintiff also failed to adduce any evidence supporting that purported agency relationship which could otherwise justify imputing the actions of those third-party publishers to Defendant for jurisdiction purposes. Consequently, the Court concluded that in the absence of necessary minimum contacts it lacked jurisdiction over Thrive and dismissed the complaint accordingly. An identical result is justified here. In fact, it is more justified because Modaramo played no role in the creation or transmission of the commercial email at issue, whereas Thrive had at least acknowledged using third-party publishers to send the emails in *Zoobuh*.

      B. <u>Exercising Jurisdiction Over Modaramo Would Offend Traditional Notions of Fair Play and Substantial Justice</u>

The Court in *Zoobuh* deemed it unnecessary to determine whether exercise of jurisdiction would comport with traditional notions of fair play and substantial justice given the lack of minimum contacts, and while Modaramo respectfully submits that the jurisdictional analysis here should also conclude with the fact that such minimum contacts are lacking, it is nevertheless also worth noting that an exercise of jurisdiction over Modaramo would also offend traditional notions of fair play and substantial justice.

In *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998), the Tenth Circuit identified five factors relevant to the determination of whether or not the exercise of jurisdiction over an out-of-state defendant is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering

fundamental substantive social policies. *Id.* at 1095 (citing *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County.,* 480 U.S. 102, 113 (1987)). During a court's analysis of these factors, it is counseled to "take into account the strength of a defendant's minimum contacts." "[T]he reasonableness prong of the due process inquiry 'evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d (quoting *OMI Holdings*, 149 F.3d. at 1092). These factors all favor an appropriate declination of jurisdiction over Modaramo.

The Tenth Circuit places "special significance" on the burden factor, deeming it of "primary concern" in determining the reasonableness of personal jurisdiction. *OMI Holdings, Inc.*, 149 F.3d at 1096. Here, the burden to Modaramo will be great. It is a New York company, which is not registered to do business in Utah, does not have any offices, employees or agents in Utah, and which has no direct contact with the State. *Bonabi Decl.* ¶¶ 2, 4-17. The cross-country travel to litigate this matter would create significant and onerous logistical burdens to it. The burden factor identified by *OMI Holdings* favors defendants in Modaramo's position. *See e.g, Outdoor Channel, Inc. v. Performance One Media, LLC,* 826 F.Supp.2d 1271 (N.D. Okla. 2011) (factor weighs in favor of Colorado defendant when hailed into Oklahoma court); *Resource Associates Grant Writing & Evaluation Services, Inc. v. Southampton Union Free School District*, 193 F.Supp.3d 1200, 1244 (recognizing that factor does not strongly weigh in favor of plaintiff when defendant's home state is not adjacent to forum state).

Next, Utah has no special interest in adjudicating Plaintiff's claims. XMission has brought its claims pursuant to a federal statute. This matter will not require a general application of Utah

10

law which might otherwise implicate Utah's interest. *See Asahi*, 480 U.S. at 115. As a result, this factor also favors Modaramo.

As to the third factor, whether or not a plaintiff would be able to receive convenient and effective relief in an alternative forum, this factor again favors Modaramo. In applying this factor, courts consider whether litigating elsewhere will greatly diminish a plaintiff's chances of recovery because of the other forum's or otherwise be "so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097. Once again, because XMission's claim is solely for alleged violation of federal law, it cannot be said that litigating in a different forum would be prohibitive to Plaintiff or otherwise practically diminish its chances of recovery, let alone present an impediment to convenient or effective relief. Nor would litigating in a different forum even likely prevent XMission from pursuing the claim. Thus, this factor also weighs in favor of Modaramo.

The final relevant factor to the constitutional analysis is the interstate judicial system's interest in obtaining efficient resolution. *OMI Holdings* identified this factor as one which examines whether the forum state is the most efficient place to litigate the dispute, enumerating that the key to this inquiry being the location of witness, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *Id*. at 1097. Here, each party can be expected to have evidence in its home state, rendering any conclusion that Utah is the most efficient place to litigate the claim speculative, at best. Moreover, given the nature of XMission's CAN-SPAM allegation, in which it alleges certain header and subject line violations of commercial email, any alleged wrong seemingly occurred before the email had ever touched XMission's Utah-based servers. Moreover,

again, XMission can litigate its federal CAN-SPAM claims in any forum. Consequently, this factor likewise favors Modaramo.

Because Modaramo has no minimum contacts with Utah, because XMission's claims do not arise out of Modaramo's contacts with Utah, and because any exercise of jurisdiction over Modaramo in Utah would violate traditional notions of fair play and substantial jurisdiction, the Court should appropriately decline to exercise such jurisdiction and dismiss the Complaint accordingly.

## V. CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over Modaramo and Modaramo respectfully requests that the Court grant its Motion and issue an Order pursuant to Fed. R. Civ. P. 12(b)(2) dismissing the Complaint in its entirety with prejudice.

DATED this 27th day of May, 2022.

**AKERMAN LLP**

By: */s/ Robert H. Scott*
  Robert H. Scott
  *Attorneys for Modaramo Media, Inc.*
  *incorrectly sued here as Modaramo Media, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May, 2022, I caused a true and correct copy of **DEFENDANT MODARAMO MEDIA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT** to be filed via the Court's CM/ECF system which provided electronic notice of such filing to all persons registered to receive notice in this case.

*/s/ Robert H. Scott*